AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br>Kevin Augustine OUTTEN,<br>Blanc AUGUSTIN, and<br>Jorge Luis JIMENEZ-LOVERA,<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 19-8274-DLB |

FILED BY SP D.C.

JUL 17 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July 3, 2019 _____ in the county of _____ Palm Beach** _____ in the _____ Southern _____ District of _____ Florida _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 8 U.S.C. § 1324(a)(1)(A)(iv)<br>Title 8 USC §§ 1326(a) and (b)(2)<br>(Outten) | Alien Smuggling; Attempted illegal reentry after deportation |
| Title 8 U.S.C. § 1325(a)<br>(Augustin and Jimenez-Lovera) | Attempted illegal entry into the United States |

**Upon the high seas and out of the jurisdiction of any particular State or district, and elsewhere, with Palm Beach County, in the Southern District of Florida, being the district to which the offenders were first brought.

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Sean Cohen, Special Agent, ICE
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-17-2019

*Judge's signature*

City and state: West Palm Beach, FL        Dave Lee Brannon, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR ARREST WARRANT

I, Sean Cohen, being first duly sworn, hereby depose and state as follows:

1. I have been a Special Agent with Immigration and Customs Enforcement, now known as Homeland Security Investigations, since December 2011. As a Special Agent, I have received extensive training and have been assigned to conduct investigations of criminal violations of the United States Code concerning criminal violations of immigration laws. Furthermore, I am trained and experienced in the legal requirements for aliens to enter the United States. I am responsible for investigating aliens entering the United States and investigating violations of statutes relating to Immigration and Customs Enforcement, including Title 8 of the United States Code.

2. This affidavit is based upon my own knowledge as well as information provided to me by other law enforcement officers. This affidavit does not set forth every fact known to me regarding the investigation but only those facts necessary to establish probable cause to believe that: 1) **Kevin Augustine OUTTEN** committed the offense of alien smuggling, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv), and attempted illegal re-entry after deportation, in violation of Title 8, United States Code, Sections 1326(a) and (b)(2); 2) **Blanc AUGUSTIN** committed the offense of attempted illegal entry, in violation of Title 8, United States Code, Section 1325(a); and 3) **Jorge Luis JIMENEZ-LOVERA** committed the offense of attempted illegal entry, in violation of Title 8, United States Code, Section 1325(a).

3. On Wednesday, July 3, 2019 at approximately 0150 hours, Customs and Border Protection air and marine assets identified a vessel approximately 25 nautical miles east of Boca Raton, Florida. At approximately 0300 hours, Palm Beach County Sheriff's Marine Enforcement Unit (MEU) intercepted the vessel. Upon arrival on scene, agents determined that the vessel had

16 passengers on board, which included one Bahamian national, one Dominican Republic national, and fourteen Haitian nationals. Border Patrol Agent (BPA) Miguel Esteves was one of the agents assigned to the Palm Beach County Sheriff's MEU that intercepted the vessel.

4. According to BPA Miguel Esteves, he and other PBSO deputies were on patrol near the Lake Worth Inlet, and received a call for assistance from a CPB/AMO aircraft.

5. The aircraft crew spotted a target of interest (TOI) approximately 25 nautical miles east of Boca Raton, Florida. The TOI was traveling westbound at approximately 17 knots without navigation lights. The TOI was described as a cabin vessel with a top cover and twin outboard engines.

6. Agent Esteves came in contact with CBP aircraft via service radio and was able to get a projected intercept path that put the MEU vessel and the TOI inside the United States territorial waters in order to conduct a boarding. At approximately 0245, the MEU got close to the TOI noticing that the vessel was navigating without the proper lighting requirements while crossing into U.S. waters. The MEU agents energized their emergency equipment (blue lights and siren) initiating a vessel stop at coordinates (N26'26.453 and W-79'51.357) on a Florida registered vessel number FL 6486RH. The TOI came to a complete stop and the driver later identified as Kevin Augustine OUTTEN, a Bahamian national, complied with the commands from the MEU agent.

7. The MEU agent was able to observe some people sitting on the back deck of the vessel and several others inside the cabin. Agent Esteves administratively questioned OUTTEN about how many people he was traveling with. OUTTEN replied that he did not know but that he thought it was about 20. The passengers were ordered out of the cabin. The MEU agents immediately noticed that the subjects were not wearing regular boating apparel and appeared to be

2

really nervous and did not speak English. Agent Esteves asked the passengers about their nationalities but none seemed to understand the agent. OUTTEN informed the agent that they were all from Haiti. Agent Esteves was able to identify a female passenger who understood the English language and asked her if any of the occupants had any documents allowing them to be in the United States. She asked all of the occupants, and they all answered "no."

8. Agent Esteves asked OUTTEN about their origin and destination. OUTTEN replied that they came from Freeport, Bahamas and he was going to drop them off in Palm Beach, Florida. BPA Esteves also stated that OUTTEN mentioned OUTTEN drove the boat.

9. Besides the adult male Bahamian boat captain (OUTTEN), there were a total of 15 passengers, to include 7 female Haitians, 7 male Haitians, and 1 male Dominican.

10. The MEU requested the assistance of the United States Coast Guard and all subjects were transferred over to the USCG Cutter Webber pending an RTC call. Based on the RTC call, it was determined that the subjects would be landed in order to be processed for administrative removal.

11. On July 4, 2019, at approximately 1515 hours, the aliens were landed at the U.S. Coast Guard Lake Worth Station, Riviera Beach, Palm Beach County, Southern District of Florida, and turned back over to U.S. Border Patrol, where they were transported to the Border Patrol Station in Rivera Beach.

12. Through later interviews, the aliens advised that they departed Freeport, Bahamas on July 02, 2019, at approximately 2200 hours on a vessel with the intention of traveling to the United States. They were smuggled into the U.S. onboard the vessel that was operated by Kevin Augustine OUTTEN.

13. On Monday, July 8, 2019 and Tuesday, July 9, 2019, your affiant spoke telephonically with BPA Esteves, and BPA Esteves confirmed that he saw a male, later identified as Kevin Augustine OUTTEN, driving the vessel and standing behind the helm of the vessel.

14. On Wednesday, July 10, 2019, Border Patrol Agent in Charge (PAIC) Angel Belen, the PAIC of the West Palm Beach Border Patrol Station, provided the following written statement: On July 3, 2019, an agent from West Palm Beach Station (WES) assigned to the Palm Beach County Sheriff's Office (PBSO) marine unit interdicted a maritime smuggling event 10 nautical miles (NM) east of Delray Beach, Florida. (26.447710/-79.854666). The captain, OUTTEN, attempted to smuggle 15 migrants into the United States. Ten migrants were repatriated back to the Bahamas. Five of the adult migrants and OUTTEN were detained and processed for removal (four Haitian males and one Dominican male). OUTTEN, a Bahamian national, was previously removed from the U.S. after serving over oneyear for alien smuggling in 2006. On July 4, 2019, I [PAIC Belen] was transporting aliens from U.S Coast Guard Station Lake Worth Inlet to U.S. Border Patrol station. While moving OUTTEN toward transport van, I [PAIC Belen] told another agent that OUTTEN was the boat driver. OUTTEN corrected me [PAIC Belen] and told me he was the boat captain. I [PAIC Belen] referenced him as a driver one more time while placing him into the detention area of the transport van, and he again corrected me [PAIC Belen] again. This concludes PAIC Belen's written statement.

15. On Thursday, July 4, 2019 at approximately 1558 hours, Intelligence Research Specialist (IRS) John Labbe with the Homeland Security Investigations (HSI) advised one of the Haitian male passengers, Blanc AUGUSTIN, of his *Miranda* Rights. AUGUSTIN placed his initials next to each line on the *Miranda* Rights form indicating he understood his rights.

AUGUSTIN agreed to speak without the presence of legal counsel, and AUGUSTIN signed the waiver portion of the Miranda Rights form at approximately 1603 hours.

16. The interview was conducted in the Creole language with IRS Labbe serving as an interpreter. The below is an interview summary. It is not intended to be a verbatim account and does not memorialize all statements made during the interview. Communications by the parties in the interview room were captured using an audio recorder. The recording captures the actual words spoken.

17. AUGUSTIN stated he has a cousin named Richard Augustin who lives in the United States.

18. AUGUSTIN said he started his trip about 3 months ago by leaving Haiti, and travelling to an island somewhere. AUGUSTIN said that he was told by other Haitians that he landed in Freeport, Bahamas. AUGUSTIN said that he did not have permission nor any documents to enter the U.S. and that he knows you need documents to enter the U.S. AUGUSTIN said that he was not sure where the boat was going after it left the Bahamas.

19. AUGUSTIN said that he did not pay anyone for his trip to the Bahamas, and he did not pay anyone for his trip from the Bahamas to the U.S.

20. AUGUSTIN said he realized who was driving the boat when the boat was interdicted. (Agent note: During the interview with AUGUSTIN, your affiant showed AUGUSTIN a photographic line-up of six different males, and AUGUSTIN identified the male in photograph #5 as the driver of the vessel who was bringing AUGUSTIN and the other migrants towards the U.S. The male in photograph #5 is Kevin Augustine OUTTEN). AUGUSTIN signed his name and put the date, 04-07-2019, under photograph #5). AUGUSTIN said the driver was Bahamian.

21. AUGUSTIN said there were mostly Haitians on the boat, and there was one Dominican male.

22. AUGUSTIN said his hometown is Port-de-Paix, Haiti.

23. AUGUSTIN said that he left Haiti primarily for economic reasons, and there were some people around his area who were giving him pressure to leave. The interview with AUGUSTIN concluded at approximately 1623 hours. This concludes the summary of the interview with AUGUSTIN. A check of the National Crime Information Center (NCIC) system and a criminal history check reveals AUGUSTIN has no wants or warrants and no previous criminal history.

24. On Thursday, July 4, 2019, SA Antony Diez with the Homeland Security Investigations (HSI) advised Jorge Luis JIMENEZ-LOVERA (Dominican Republic national) of his *Miranda* Rights using a standardized form. After being advised of his *Miranda* Rights, JIMENEZ-LOVERA (hereafter called JIMENEZ) agreed to speak without the presence of legal counsel, and JIMENEZ signed the waiver portion of the Miranda Rights form.

25. SA Diez and BPA Juan Miranda began to interview JIMENEZ at approximately 1547 hours. The interview was conducted in the Spanish language. The below is an interview summary. It is not intended to be a verbatim account and does not memorialize all statements made during the interview. Communications by the parties in the interview room were captured using an audio recorder. The recording captures the actual words spoken.

26. JIMENEZ stated he paid a total of $15,000.00 (U.S. dollars) to be smuggled to the U.S. JIMENEZ stated he paid $7,000.00 to a "Jeff" in Freeport, Bahamas, and JIMENEZ paid $8,000.00 to a friend of a "Greg" in Nassau, Bahamas.

27. JIMENEZ stated the boat had 15 people on it and left Freeport, Bahamas. JIMENEZ stated he and the other migrants met at approximately 2100 hours at a beach in Freeport prior to departing on the boat.

28. JIMENEZ stated he was provided and wore a life vest.

29. JIMENEZ said he was headed to West Palm Beach, FL and would then be going to Pembroke Pines, FL.

30. JIMENEZ said the captain admitted to being the captain of the vessel when the vessel was intercepted by law enforcement. JIMENEZ said the boat captain was using a compass to find his way. (Agent note: During the interview, JIMENEZ was shown a photographic line-up of six different males, and JIMENEZ identified the male in photograph #5 as the captain of the vessel. The male in photograph #5 is Kevin Augustine OUTTEN (Bahamian national). JIMENEZ placed his initials under photograph #5.)

31. JIMENEZ stated he left the Dominican Republic in December 2018, that he spent five months in Nassau, and then he spent six weeks in Freeport. The interview concluded at approximately 1622 hours. This concludes the summary of the interview with JIMENEZ. A check of the NCIC system and a criminal history check reveals JIMENEZ has no wants or warrants and no previous criminal history.

32. A criminal history check reveals Kevin OUTTEN was sentenced on April 2, 2007 to a prison term of one year and one day for alien smuggling, in violation of 8 U.S.C. § 1324(a)(1)(A)(i). According to the criminal complaint issued in that case, OUTTEN admitted to agents that he was hired to smuggle aliens into the U.S. for pecuniary gain.

33. Records contained in OUTTEN's immigration file confirm that OUTTEN is a native and citizen of the Bahamas. Records also confirm that OUTTEN was ordered removed

from the United States, and was physically removed from the United States to the Bahamas on December 26, 2007.

34. A fingerprint examiner confirmed that the fingerprint contained on OUTTEN's prior warrant of removal matches the fingerprint belonging to OUTTEN.

35. Agents performed a records check in the Computer Linked Application Informational Management System (CLAIMS) to determine if OUTTEN filed an application for permission to reapply for admission into the United States after deportation or removal. After a search was performed in that database system, no record was found to exist indicating that OUTTEN obtained consent from the Attorney General of the United States or from the Secretary of Homeland Security, for re-admission into the United States as required by law.

36. Based on the foregoing facts, I submit that probable cause exists to believe that:

1) **Kevin Augustine OUTTEN** committed the offense of alien smuggling, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv), and attempted illegal re-entry after deportation, in violation of Title 8, United States Code, Sections 1326(a) and (b)(2); 2) **Blanc AUGUSTIN** committed the offense of attempted illegal entry, in violation of Title 8, United States Code,

Section 1325(a); and 3) **Jorge Luis JIMENEZ-LOVERA** committed the offense of attempted illegal entry, in violation of Title 8, United States Code, Section 1325(a).

FURTHER AFFIANT SAYETH NAUGHT.

Respectfully submitted,

Sean Cohen
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on July 17, 2019

HON. DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-8274-DLB

UNITED STATES OF AMERICA

v.

Kevin Augustine OUTTEN, Blanc AUGUSTIN,
and Jorge Luis JIMENEZ-LOVERA,

Defendants.
_____/

FILED BY _____ SP _____ D.C.

JUL 17 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?     ___ Yes ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? ___ Yes ✓ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____

RINKU TRIBUIANI
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.   0150990
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:    561-820-8711
Fax:   561-820-8777
Email: rinku.tribuiani@usdoj.gov